J-S55030-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE INTEREST OF: A.G. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.B. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 905 WDA 2019 |

Appeal from the Order Entered May 30, 2019
In the Court of Common Pleas of Indiana County Orphans' Court at
No(s): 32-19-0092

BEFORE:   MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                    FILED DECEMBER 10, 2019

J.B. ("Father") appeals from the decree entered on May 30, 2019, which terminated his parental rights as to his one-year-old daughter, A.G. ("Child"). Father's counsel has filed an Anders[1] brief and a motion to withdraw as counsel. Upon review, we grant counsel's motion to withdraw and affirm the decree.

Child was born in July 2018, and was approximately 11 months old at the time of the termination hearing. N.T., 5/30/19, at 7. The day after her birth, Child's natural mother signed a voluntary placement agreement with Indiana County Children and Youth Services ("CYS") and CYS immediately

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Anders v. California, 386 U.S. 738 (1967), and Commonwealth v. Santiago, 978 A.2d 349 (Pa. 2009).

placed Child in a pre-adoptive foster home.[2] Id. at 7, 14. Child was adjudicated dependent in August 2018. Trial Court Opinion, filed 7/11/19 ("TCO"), at 2. Father took a paternity test approximately six weeks after Child's birth that confirmed that he is Child's biological father. Id. at 6; N.T., 5/30/19, at 7. Child has remained in the same pre-adoptive home since leaving the hospital after her birth. N.T., 5/30/19, at 14.

CYS filed a petition for involuntary termination in March 2019. The court held a hearing on the petition in May 2019, but Father failed to appear. Id. at 4. The only witness to testify at the termination hearing was the CYS caseworker assigned to Child's case, Rachel Pommer. She testified that Father's goals were to undergo mental health and drug and alcohol evaluations, complete a parenting assessment, take a sex offender assessment, maintain contact with CYS, and visit with Child. Id. at 10. Ms. Pommer testified that other than being in the same room as Child during the paternity test, Father has never met Child. Id. at 11. She also said that Father has never visited Child and would not recognize her if they were both walking down the same street. Id. at 11, 18.

Ms. Pommer additionally stated that from the onset of the case, Father did not want CYS to consider him as a placement option for Child; rather, he asked them to consider his niece. Id. at 8. Further, Ms. Pommer said that Father is extremely argumentative and uncooperative with CYS. Id. at 9-10.

_____

[2] Child's mother consented to termination of her parental rights in April 2019.

She testified that Father has refused to comply with his goals, having stated in response to questions about his drug and alcohol assessment, "[Y]ou ain't got nothing on me, honey," and, "[G]o to hell." Id. at 12. She said Father has never parented Child and never completed any of his goals. Id. at 10-11, 18.

Ms. Pommer also testified that Child has a strong bond to her foster parents, with whom she has lived since her birth. Id. at 14-15. Ms. Pommer opined that there would be no negative effect on Child if the court terminated Father's parental rights, and that it was in Child's best interest for the court to do so and for Child's foster parents to adopt her. Id. at 15-16. Child's Guardian ad litem likewise stated on the record that it would be in Child's best interest to terminate Father's parental rights. Id. at 19.

At the end of the hearing, the trial court granted the termination petition. Id. at 20-21. This timely appeal followed.

Counsel's Anders brief identifies three issues:

> 1. Did the lower court commit an abuse of discretion or error of law when it denied Father's counsel's oral motion for continuance?
>
> 2. Did the lower court commit an abuse of discretion or error of law when it concluded that the agency established grounds for termination pursuant to 23 Pa.C.S.A. [§] 2511(a)(1), (2), and (5)?
>
> 3. Did the lower court commit an abuse of discretion or error of law when it failed to acknowledge Father's constitutional argument?

Anders Brief at 5 (unnecessary capitalization omitted).

Before reviewing the merits of this appeal, we must first determine whether counsel has satisfied the necessary requirements for withdrawing as counsel. See Commonwealth v. Goodwin, 928 A.2d 287, 290 (Pa.Super. 2007) (en banc) (stating that "[w]hen faced with a purported Anders brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw"). In order to withdraw pursuant to Anders, counsel must: 1) petition the court for leave to withdraw stating that, after a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the client; and 3) advise the client that he or she has the right to retain other counsel or proceed pro se. Commonwealth v. Cartrette, 83 A.3d 1030, 1032 (Pa.Super. 2013) (en banc).

Further, in the Anders brief, counsel seeking to withdraw must:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

Commonwealth v. Santiago, 978 A.2d 349, 361 (Pa. 2009). If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly

frivolous." Id. at 355, n.5 (quoting Commonwealth v. McClendon, 434 A.2d 1185, 1187 (Pa. 1981)).

Instantly, we find that counsel has complied with all of the above technical requirements. In her Anders brief, counsel has provided a summary of the procedural and factual history of the case with citations to the record. Further, counsel's brief identifies three issues that could arguably support the appeal, as well as counsel's assessment of why the appeal is frivolous, with citations to the record. Additionally, counsel served Father with a copy of the Anders brief and advised him of his right to proceed pro se or to retain a private attorney to raise any additional points he deemed worthy of this Court's review. Motion to Withdraw, 7/29/19, at ¶ 8. Father has not responded to counsel's motion to withdraw. As counsel has met the technical requirements of Anders and Santiago, we will proceed to the issues counsel has identified.

The first issue presented in counsel's Anders brief is whether the trial court committed an abuse of discretion or error of law when it denied counsel's oral motion for a continuance. Anders Br. at 5. At the outset of the termination hearing, Father's counsel requested a continuance due to Father's absence from the hearing. N.T., 5/30/19, at 4. Father's counsel stated that she had discussed the hearing with Father "last week and he even referenced the day, the 30th, he would be here." Id. Additionally, Ms. Pommer, the CYS caseworker, testified that she sent Father notice of the hearing by certified mail. Id. at 16. She stated that she had a telephone conversation with Father

in which Father acknowledged receiving the certified mail. Id. Ms. Pommer also sent Father a text message to confirm the hearing's date and time and Father responded that he would be present for the hearing. Id.

We reverse the trial court's denial of a continuance only for an abuse of discretion. In the Interest of D.F., 165 A.3d 960, 965 (Pa.Super. 2017), appeal denied, 170 A.3d 991 (Pa. 2017). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias, or ill-will." In re J.K., 825 A.2d 1277, 1280 (Pa.Super. 2003) (quoting Corrado v. Thomas Jefferson Univ. Hosp., 790 A.2d 1022, 1035 (Pa.Super. 2001)).

Importantly, while a parent must receive notice of a termination hearing, a parent's presence is not required for the termination to proceed. In the Interest of D.F., 165 A.3d at 965.

> Once a court is satisfied that a parent has received notice of the hearing, it is then entirely within the trial court's discretion to make a ruling on the continuance request based on the evidence before it. As in all matters involving parental rights, the best interests of the child are paramount. Accordingly, the exercise of the trial court's discretion includes balancing the evidence submitted in support of the request against other relevant factors, such as a parent's response and participation, or lack thereof, in prior proceedings and appointments important to the welfare of the child. Most importantly, the trial court is in the best position to factor in the impact that further delay will have on the child's well-being.

Id.

Here, counsel based the motion for a continuance solely on the fact that Father had failed to appear at the hearing; she did not claim that he did not receive notice. Indeed, it was undisputed that Father had notice of the hearing. As Father had notice of the hearing and his presence was unnecessary for the hearing to proceed, id., we will not disturb the trial court's denial of the continuance request.

The next issue noted in counsel's Anders brief relates to the sufficiency of the evidence to terminate Father's parental rights pursuant to 23 Pa. C.S.A. § 2511(a)(1), (2), and (5). Anders Br. at 5. We review an order involuntarily terminating parental rights for an abuse of discretion. In re G.M.S., 193 A.3d 395, 399 (Pa.Super. 2018) (citation omitted). In termination cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (quoting In re Adoption of S.P., 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." In re Adoption of K.C., 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." In re Adoption of S.P., 47 A.3d at 826.

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. In re Adoption of K.C., 199 A.3d at 473. Clear and convincing evidence means

evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." Id. (internal quotation marks and citation omitted in original).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. In re L.M., 923 A.2d 505, 511 (Pa.Super. 2007). Under this provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

Id. (citations omitted). In order to affirm the termination of parental rights, this Court need only affirm the trial court's decision as to any one subsection of Section 2511(a). In re B.L.W., 843 A.2d 380, 384 (Pa.Super. 2004) (en banc).

Here, the trial court found termination proper pursuant to subsections 2511(a)(1), (2), and (5), as well as under Section 2511(b). As only one basis for termination under Section 2511(a) is necessary, we will focus our attention

on the trial court's termination of Father's parental rights pursuant to subsection 2511(a)(1). That subsection permits termination if "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1). Since CYS filed the petition in this case on March 1, 2019, the relevant six-month period began on September 1, 2018. The trial court found as a fact that Father made absolutely no efforts to perform any parental duties since before that date, i.e., since he was identified as Child's biological father in August 2018.

Upon review, we find that the record clearly and convincingly supports the findings of the trial court, and indeed, no evidence of record contradicted those findings. At the termination hearing, the CYS caseworker testified that Father has never met or visited with Child with the exception of one time when they were in the same room for the paternity test. N.T., 5/30/19, at 11. Father also refused to begin any court-ordered services. Id. at 10-12. It is thus abundantly apparent from the record that Father has not attempted to perform parental duties or work toward reunification with Child. Any sufficiency challenge under Section 2511(a) would be frivolous.

Although counsel has not identified it as a potential issue, we also address the second part of the analysis, pursuant to Section 2511(b). Section 2511(b) provides:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

The focus under Section 2511(b) is not on the parent, but on the child. In re Adoption of R.J.S., 901 A.2d 502, 508 (Pa.Super. 2006). Section 2511(b) requires the trial court to determine "whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child[.]" In re C.M.S., 884 A.2d 1284, 1286-1287 (Pa.Super. 2005). This inquiry involves assessment of "[i]ntangibles such as love, comfort, security, and stability . . . ." Id. at 1287. The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that bond." Id. However, the "mere existence of an emotional bond does not preclude the termination of parental rights." In re N.A.M., 33 A.3d 95, 103 (Pa.Super. 2011). Rather, the trial court must consider whether severing the bond "would destroy an existing, necessary and beneficial relationship." Id. (citation and internal quotation marks omitted). The court must also examine any pre-adoptive home and any bond between the child and the foster parents. In re T.S.M., 71 A.3d 251, 268 (Pa. 2013).

Here, the trial court found that terminating Father's parental rights was in the best interest of Child and would best serve the developmental, physical, and emotional needs and welfare of Child. TCO at 6. The court explained that Father had no bond with Child since he has never met Child except for one time. Id. In contrast, the court found that Child is strongly bonded to her foster parents with whom she has lived since birth. Id.

The record supports these findings, and no evidence of record contradicts them. It was undisputed that Father has had no contact with Child since he was identified as Child's biological father when Child was approximately six weeks old; Child has lived continuously in the same pre-adoptive home since birth; and she has a "strong bond" with her foster parents. N.T., 5/30/19, at 14-15. Any sufficiency challenge under either prong of the termination inquiry would thus lack a basis in the record.

The last issue presented in counsel's Anders brief is whether the trial court committed an abuse of discretion or error of law when it failed to acknowledge Father's constitutional argument. Anders Br. at 5. At the termination hearing, Father's counsel stated that Father did not want his parental rights terminated and "believes that it's a violation of his constitutional rights for these services [from CYS] to have been required of him before he is allowed to have custody of his child." N.T., 5/30/19, at 19.

It is well settled that "[a] parent cannot protect his parental rights by merely stating that he does not wish to have his rights terminated." In re B.,N.M., 856 A.2d 847, 856 (Pa.Super. 2004). "[A] parent's basic

- 11 -

constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." Id. A parental obligation is a positive duty that requires affirmative performance and "cannot be met by a merely passive interest in the development of the child." In re C.M.S., 832 A.2d 457, 462 (Pa.Super. 2003) (citation omitted).

Here, Father has not made any affirmative efforts to maintain the parent-child relationship. Further, Father's argument that it was "a violation of his constitutional rights for these services [from CYS] to have been required of him before he is allowed to have custody of his child" is unavailing because Father did not even desire to have custody of the Child. Rather, after paternity for Child was established, Father immediately informed CYS that he did not want to be a placement option for Child and asked them to place Child with his niece. N.T., 5/30/19, at 7-8. Accordingly, this constitutional claim is frivolous.

In sum, we find that the issues raised in counsel's Anders brief are wholly frivolous. Further, after an independent review of the record, we conclude that no other, non-frivolous issue exists. Therefore, we grant counsel's motion to withdraw. Having determined that the appeal is wholly frivolous, we affirm the decree terminating Father's parental rights.

Motion to withdraw as counsel granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/10/2019